IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY MYERS,

          Plaintiff,

    v.

BEAVERTON SCHOOL DISTRICT 48J,

          Defendant.

Case No.: 3:25-cv-00677-AN

OPINION AND ORDER

Plaintiff Jeffrey Meyers, who is self-represented and thus proceeding pro se, brings this action against defendant Beaverton School District 48J ("defendant" or the "District"), alleging that defendant's implementation of a digital hall pass system violates his substantive and procedural due process rights under the Fourteenth Amendment; Oregon Revised Statutes ("ORS") § 336.187; and Article I, sections 9 and 10 of the Oregon Constitution.[1]  On June 6, 2025, defendant filed a motion to dismiss this case in its entirety for failure to state a claim and to dismiss the Oregon Constitution Article I, section 9 claim for lack of standing.  Plaintiff timely filed a response, and defendant timely filed a reply.  Upon review of the parties' filings, the Court finds this matter appropriate for decision without oral argument.  *See* Local R. 7-1(d).  For the reasons stated herein, defendant's motion is GRANTED, and this case is DISMISSED without prejudice and with leave to amend.

## LEGAL STANDARD

**A.     Motion to Dismiss**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially

---

[1] Plaintiff has withdrawn his claim brought under ORS § 336.184.  *See* Pl. Resp. Opp'n Def. Mot. to Dismiss ("Pl. Resp."), ECF 26, at 3.  Plaintiff also clarifies that he does not assert independent claims under either the Family Educational Rights and Privacy Act ("FERPA") or the Protection of Pupil Rights Amendment ("PPRA") and that he cites those statutes only as relevant context for his constitutional and statutory claims. *Id.*

1

plausible claim for relief.  *Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party.  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The court must draw all reasonable inferences from the factual allegations in the plaintiff's favor.  *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008).  The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr*, 652 F.3d at 1216.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, courts may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice[,]" as well as "a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

**B.    Self-Represented Litigants**

Pleadings filed by self-represented litigants "are held to a less stringent standard than those drafted by lawyers."  *Graves v. Nw. Priority Credit Union*, No. 3:20-cv-00770-JR, 2020 WL 8085140, at *2 (D. Or. Dec. 12, 2020) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  "In cases involving a [self-

represented] plaintiff, the court construes the pleadings liberally and affords the plaintiff the benefit of any doubt." *Kali v. Bulk Handling Sys.*, No. 6:18-cv-02010-AA, 2019 WL 1810966, at \*4 (D. Or. Apr. 23, 2019) (citing *Wolfe v. Strankman*, 392 F.3d 358, 392 (9th Cir. 2004)). Further, "[u]nless it is absolutely clear that no amendment can cure the defect," self-represented litigants are "entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)).

## BACKGROUND

### A.    Factual Background

This case centers around a digital hall pass ("DHP") system implemented by defendant. 1st Am. Compl. ("Compl."), ECF 8, ¶ 11. On January 24, 2025, plaintiff learned that his child's school, Mountain View Middle School ("MVMS"), had implemented the DHP system. *Id.* When the DHP system was introduced, it was limited to restroom usage; however, within approximately two months, the DHP system was expanded to include visits to the health room, student lockers, and technology support. *Id.* ¶ 14.

The DHP system is operated through the Synergy Student Information System ("Synergy SIS") and is accessible to students via a digital portal called StudentVUE. *Id.* ¶¶ 2, 12. To request a hall pass, students log in to their StudentVUE account, click "Request a Hall Pass," and select a destination and duration. *Id.* ¶ 12 & Ex. B, at 3-5. Staff monitor and review real-time usage and approve hall pass requests. *Id.* ¶ 12. The DHP system

> also includes more advanced behavioral and logistical features—such as limiting the number of students allowed in a given destination (e.g., a maximum of two students in the health room at one time), controlling when hall passes can be requested (e.g. disabling requests during the first and last 10 minutes of a class), and enforcing individualized restrictions (e.g., preventing Student A from receiving a hall pass if Student B currently has one, even if the students are in different classrooms or grade levels).

*Id.* ¶ 13E. From time to time, the school's Behavioral Health and Wellness Team ("BHWT") reviews the DHP system data to identify patterns in student movement and flag students for "extraordinarily high" usage. *Id.* ¶¶ 13F, 17A. These data reviews can result in staff-initiated meetings with students, without

3

prior notice to parents, with the goal of increasing students' educational engagement and success in school. *Id.* ¶ 13F.

Although parents can view traditional attendance data, such as absences and tardies, through the ParentVUE portal, parents cannot view the data collected through the DHP system. *Id.* ¶ 13B. The data captured by the DHP system—consisting of the student's name, time of request, destination (e.g., restroom, health center, or locker), selected duration, approving staff member, and total time out—is stored in Synergy SIS with no parental review process, purge policy, or expiration schedule. *Id.* ¶¶ 14A, 15A.

Approximately 150 staff members across the District have access to DHP data for students at MVMS. *Id.* ¶ 15A. The list of authorized users includes MVMS staff, including the principal, assistant principals, teachers, school counselors, and support staff, as well as individuals who serve all District students. *Id.* ¶ 15A & Ex. C.

On February 26, 2025, plaintiff submitted his concerns regarding the DHP system to the MVMS principal. *Id.* ¶ 13. Plaintiff received a response from the principal on March 20, wherein the principal acknowledged that the DHP system tracks patterns and behaviors and may be used to identify "medical needs not yet diagnosed," but nonetheless asserted that the DHP system merely digitizes the prior non-digital attendance process. *Id.* ¶ 13 & Ex. D at 1-5. In the March 20 letter, the principal also informed plaintiff that school staff "are permitted to take actions necessary to maintain a safe and secure learning environment," including managing student movement within school facilities. *Id.* ¶ 19 & Ex. D at 2.

On March 23, plaintiff submitted formal complaints to the United States Department of Education regarding the DHP system under both FERPA and the PPRA. *Id.* ¶ 24. Also on March 23, plaintiff submitted a complaint and supplemental documentation to the District via its online complaint portal. *Id.* ¶ 22 & Exs. F, G. On April 3, the District's Compliance Officer responded to plaintiff's complaint. *Id.* ¶ 22A & Ex. H. In the response, "[t]he District reiterated its position that the [DHP] system did not require parental notice or consent, that student movement tracking within the school was permissible under in loco parentis, and that the system would not be suspended or reviewed further." *Id.* ¶ 22A. Plaintiff and the Compliance Officer exchanged emails thereafter, which plaintiff asserts resulted in "arbitrary

reclassification of his complaint status, inconsistent explanations of policy, and an unwillingness to acknowledge the urgency or scale of the issue." *Id.* ¶ 23. Plaintiff thus "determined that further delay through internal channels would be ineffective" and proceeded to file this action. *Id.* ¶ 23A.

**B.      Procedural Background**

On April 21, plaintiff initiated this action in state court, and on April 24, defendant removed to federal court. Not. of Removal, ECF 1, at 2 & Ex. 1 at 1. Also on April 24, defendant's counsel informed plaintiff "that the District would be pausing its internal complaint response due to the pending lawsuit." Compl. ¶ 23B & Ex. J. On May 23, plaintiff filed the operative first amended complaint, which includes thirteen exhibits. The same day, plaintiff filed a motion for temporary restraining order ("TRO") and preliminary injunction, ECF 9, which the parties then fully briefed. On June 6, defendant filed the instant motion to dismiss for failure to state a claim. Def. Mot., ECF 19. Plaintiff responded in opposition, Pl. Resp., ECF 26; and defendant filed a reply in support, Def. Reply, ECF 37. The Court heard oral argument from the parties regarding the motion for TRO and preliminary injunction on July 3. Mins. of Proceedings of July 3, 2025, ECF 36. The Court denied the motion on the record, *id.*, and subsequently issued a written opinion and order explaining its decision, Op. & Order of July 18, 2025, ECF 38.

## DISCUSSION

The Court addresses each of plaintiff's claims in turn below.

**A.      Due Process Claims**

Plaintiff has not sufficiently alleged his substantive and procedural due process claims. The Court addresses each in turn.

> 1.      *Substantive Due Process*

Plaintiff has not adequately alleged a violation of his substantive due process rights. To begin, plaintiff identifies the liberty right at issue here as "a substantive liberty interest in directing the care, custody, and upbringing of [his] child[]," which plaintiff argues is guaranteed by the Fourteenth Amendment. Compl. ¶ 30. In his response to defendant's motion to dismiss, plaintiff further specifies that the DHP system encroaches on plaintiff's "authority to direct [his] child[]'s mental health care." Pl. Resp.

4 (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979)).

Much of the Court's earlier analysis continues to apply here.  *See* Op. & Order of July 18, 2025.

To begin, it is undisputed that the right "of parents and guardians to direct the upbringing and education of

children under their control" is a fundamental right for purposes of the Fourteenth Amendment.  *Pierce v.

Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534-35 (1925).  But this broad

parental right is not absolute: it "must bow to other countervailing interests and rights, such as the basic

independent life and liberty rights of the child and of the State acting as *parens patriae*."  *Mueller v. Auker*,

700 F.3d 1180, 1186 (9th Cir. 2012); *see Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005),

*op. am. on denial of reh'g on other grounds*, 447 F.3d 1187 (9th Cir. 2006) (per curiam).  "[O]nce parents

make the choice as to which school their children will attend, their fundamental right to control the

education of their children is, at the least, substantially diminished."  *Fields*, 427 F.3d at 1206.  Under Ninth

Circuit precedent, parents

> do not have a fundamental right generally to direct how a public school teaches their child.
> Whether it is the school curriculum, the hours of the school day, school discipline, . . .
> or . . . a dress code, these issues of public education are generally committed to the control
> of state and local authorities.

*Id.* (cleaned up).  Indeed, "with respect to education, parents have the right to choose the educational forum,

but not what takes place inside the school."  *Cal. Parents for the Equalization of Educational Materials v.

Torlakson*, 973 F.3d 1010, 1020 (9th Cir. 2020).  "Parents therefore do not have a due process right to

interfere with the curriculum, discipline, hours of instruction, or the nature of any other curricular or

extracurricular activities."  *Id.*

This means that "identifying a general parental right is far different than concluding that it has been

infringed."  *Hooks v. Clark Cnty. Sch. Dist.*, 228 F.3d 1036, 1042 (9th Cir. 2000).  The Supreme Court has

cautioned courts to be "reluctant to expand the concept of substantive due process because guideposts for

responsible decisionmaking in this unchartered area are scarce and open-ended."  *Collins v. City of Harker

Heights*, 503 U.S. 115, 125 (1992).  Given this concern, courts must "begin with a careful description of

the asserted fundamental liberty interest" and "then decide whether the asserted interest is objectively,

deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." *Regino v. Staley*, 133 F.4th 951, 960 (9th Cir. 2025) (cleaned up).

Plaintiff has not adequately identified a fundamental liberty interest.  Plaintiff's allegations focus largely on defendant's use of the DHP system to flag students for meetings with counselors to address possible behavioral or psychological concerns without parental involvement, which plaintiff argues violates parents' fundamental interest in directing the care, custody, and upbringing of their children.  *See* Compl. ¶¶ 30, 36 (suggesting that defendant's use of the DHP system to collect behavioral data and "trigger staff-led evaluations without involving families creates a constitutionally significant intrusion into parental decision-making").  It is not clear whether plaintiff asserts a parental right to decide whether defendant can collect student behavioral data through the DHP system, a parental right to decide whether defendant can use the data to initiate meetings with students to address potential behavioral or psychological concerns, or simply a parental right to notice if any such activities occur.  Regardless, the Court must conclude that none of these asserted rights are "deeply rooted in this Nation's history and tradition . . . such that neither liberty nor justice would exist if [they were] sacrificed." *Regino*, 133 F.4th at 960.

Plaintiff provides minimal argument in response to defendant's motion to dismiss, citing primarily to *Parham* for the principle "that parents, not schools, have the authority to direct their children's mental health care."  Pl. Resp. 4 (citing *Parham*, 442 U.S. at 602).  But the *Parham* court's holding was cabined more narrowly than plaintiff suggests.  In that case, the Supreme Court considered "what process is constitutionally due a minor child whose parents . . . seek state administered institutional mental health care for the child and specifically whether an adversary proceeding is required prior to or after the commitment." *Parham*, 442 U.S. at 587.  Unlike here, the constitutional due process right at issue in *Parham* was the child's "liberty interest in not being confined unnecessarily for medical treatment." *Id.* at 600.  *Parham* thus contends with the tension between parents' traditional authority to direct their children's physical and mental healthcare and the state's duty to protect a child's constitutional due process rights. *Id.* at 602-03, 606.  Even in that context, the *Parham* court recognized that parents' traditional authority to direct their

7

children's healthcare is not absolute: "a state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized," for example. *Id.* at 603. *Parham* does not establish the sweeping parental liberty interest that plaintiff urges this Court to find here.

Plaintiff also asserts that the DHP system is analogous to an unauthorized psychological evaluation that the District of Maine found unconstitutional in *Grendell v. Gillway*, 974 F. Supp. 46 (D. Me. 1997). *See* Compl. ¶¶ 31, 36. But the *Grendell* court did not find that the use of a psychological evaluation was unconstitutional. *See* 974 F. Supp. at 49-50. In fact, *Grendell* did not concern the right to parental discretion at all. In that case, the plaintiff alleged that the defendants had "use[d] her . . . to elicit incriminating information about her parents" when she was a minor. *Id.* at 50. The eleven-year-old plaintiff was pulled out of class to speak with a guidance counsel and two police officers about her parents' suggested drug use. *Id.* at 49. One of the officers told the plaintiff that her parents would be arrested if she did not cooperate, but that nothing would happen to her parents if she answered his questions. *Id.* That same officer warned the plaintiff not to tell her parents about the conversation because "often parents beat their children after the children talk to the police." *Id.* The plaintiff acquiesced and told the officers about her parents' marijuana usage. *Id.* The District of Maine found that the officer's behavior—lying and threatening an eleven-year-old child into becoming an "unwilling informant against her own parents"—violated the child's due process rights. *Id.* at 52; *see also id.* at 51 ("This type of coercive extraction of indicting information from an eleven year old girl about her parents is reprehensible behavior unworthy of constitutional protection."). The District of Maine did not address the parents' due process rights or the constitutionality of a psychological evaluation, and nothing in plaintiff's allegations comes close to the "reprehensible behavior" at issue in *Grendell.*

The rights plaintiff alleges are entirely separate. Plaintiff seeks the right to direct how defendant collects and uses student behavioral data, and the right to notice of such data usage. While these rights concern the parent-child relationship, they cannot be deemed fundamental. Instead, these rights fall squarely within the ambit of "direct[ing] how a public school teaches [plaintiff's] child." *Fields*, 427 F.3d at 1206. And plaintiff does not have a fundamental right to direct "what takes place inside the school"

8

through defendant's use of the DHP system. *Torlakson*, 973 F.3d at 1020.

Because the rights plaintiff asserts are not fundamental, defendant's use of the DHP system need only be "'rationally related to legitimate government interests.'" *Slidewaters LLC v. Wash. State Dep't of Labor & Indus.*, 4 F.4th 747, 759 (9th Cir. 2021) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997)). This standard is clearly satisfied here. Defendant's use of the DHP system is rationally related to the legitimate government interests of monitoring students' attendance, physical location, and class participation to ensure student safety and general welfare. *See* Compl. ¶ 19 & Ex. D at 2, 4. Accordingly, plaintiff has not alleged a violation of his right to substantive due process.

2.      *Procedural Due Process*

Plaintiff also has not adequately alleged a violation of his procedural due process rights. Under the doctrine of procedural due process, the government may not deprive an individual of a protected property or liberty interest without providing that individual due process of law. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998). "Once it is determined that due process applies"—i.e., once a protected property or liberty interest has been identified—"the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Unlike a substantive due process claim, a procedural due process claim does not depend on the fundamental nature of the alleged right. "Rather, procedural due process 'protects all liberty interests that are derived from state law or from the Due Process Clause itself." *Regino*, 133 F.4th at 967 (quoting *Mullins v. Oregon*, 57 F.3d 790, 795 (9th Cir. 1995)). Under this framework, the Court must first determine whether plaintiff has alleged the deprivation of a constitutionally protected property or liberty interest. Only then do the questions of what process was due and whether plaintiff received that process arise.

Here, plaintiff cannot satisfy the first step. Plaintiff alleges that defendant violated his procedural due process rights by failing to notify, obtain consent from, or provide an opt-out opportunity to him before collecting data through the DHP system and using those data to initiate student interventions.[2] Compl.

---

[2] Plaintiff also reframes his substantive due process argument as a procedural due process claim. *See* Compl. ¶ 30 (alleging that plaintiff has "a procedural due process right not to be deprived of" his

¶¶ 31, 33. Plaintiff contends that FERPA and the PPRA only allow defendant to disclose educational records without parental consent if there is a "legitimate educational interest" in doing so, and that defendant's failure to comply with these statutes violated plaintiff's right to procedural due process. *Id.* ¶¶ 35-36.

As an initial matter, FERPA does not provide an individually enforceable right. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002). As such, the Court doubts that a violation of FERPA could support a procedural due process claim. *See Schrader v. Emporia State Univ.*, No. 19-2387-DDC-TJJ, 2021 WL 4284543, at *8 n.6 (D. Kan. Sept. 21, 2021) ("If there's no individual right under FERPA, the court fails to see how a violation of that statute can support a procedural due process claim"); *see also Dixon v. Regents of Univ. of N.M.*, 242 F.3d 388 (table), 2000 WL 1637557, at *4 n.4 (10th Cir. 2000) (unpublished); *McLaughlin v. Fla. Int'l Univ. Bd. of Trs.*, 533 F. Supp. 3d 1149, 1171 (S.D. Fla. 2021). Based on the Supreme Court's reasoning in *Gonzaga University*, this Court similarly finds it unlikely that the PPRA provides an individually enforceable right or that a PPRA violation could support a procedural due process claim. *See* 536 U.S. at 280-89.

Even assuming that FERPA and the PPRA could provide a basis for plaintiff's claim, plaintiff fails to explain how either FERPA or the PPRA guarantees the liberty interests that plaintiff asserts or how defendant allegedly violated either of those statutes. The Court first considers FERPA. FERPA may create a path for plaintiff to access his child's data, but it does not require defendant to notify parents when it creates an education record or to proactively permit access to the DHP system. *See generally* 20 U.S.C. § 1232g; *see also* Compl. ¶ 13C ("When Plaintiff initially asserted that DHP data was inaccessible to parents, the District disagreed—presumably because a parent could request such data under FERPA."). Further, FERPA permits disclosure of education records without the written consent of students' parents to "other school officials, including teachers within the educational institution or local educational agency,

"substantive liberty interest in directing the care, custody, and upbringing of" his child "without adequate notice and opportunity to respond"). This argument rises and falls with plaintiff's substantive due process argument. Accordingly, this argument fails for the same reasons as the substantive due process claim.

who have been determined by such agency or institution to have legitimate educational interests, including the educational interests of the child for whom consent would otherwise be required." 20 U.S.C. § 1232g(b)(1)(A); *see* 34 C.F.R. § 99.31(a)(1)(i)(A). Defendant has determined that certain groups of staff members have legitimate educational interests and explains why these staff have access to data in the DHP system based on their job responsibilities. Compl. Ex. D at 1. Plaintiff argues that many of these staff have "no educational relationship" to the students being monitored. Compl. ¶ 41. But this conclusion is not supported by the allegations, and the Court has no reason to doubt defendant's determination.

As to the PPRA, that statute requires the consent of a student's parent before the student is "required . . . to submit to a survey, analysis, or evaluation" that reveals certain information, including, in relevant part, the "mental or psychological problems of the student or the student's family." 20 U.S.C. § 1232h(b)(2). However, submission of information that is not protected by the PPRA does not violate the PPRA. *See, e.g.*, *Doe No. 1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*, No. 3:22-cv-337, 2023 WL 5018511, at *22 (S.D. Ohio Aug. 7, 2023), *appeal docketed*, No. 23-3740 (6th Cir. Sept. 8, 2023).

Plaintiff argues that the DHP system is a survey, analysis, or evaluation that reveals a student's mental or psychological problems. But plaintiff overstates how the DHP system functions. The DHP system requires students to log into StudentVUE, click "Request a Hall Pass," and then select a destination and duration. Compl. ¶ 12 & Ex. B, at 3-5. This cannot be said to constitute a survey, analysis, or evaluation under the PPRA. *Cf. Doe No. 1*, 2023 WL 5018511, at *22 (finding that requiring a student to read books does not qualify as an attitudinal survey); *Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist., Wisc.*, 657 F. Supp. 3d 1161, 1175 (W.D. Wisc. 2023) (finding that the plaintiff did not sufficiently allege that the defendants "required any child to submit to any type of survey, analysis, or evaluation in conjunction with" the challenged conduct). Additionally, the DHP system does not request information that is protected under the PPRA. The fact that a school's BHWT may later review the data as part of determining whether students need additional support does not mean that the information itself reveals any "mental or psychological problems of [a] student." 20 U.S.C. § 1232h(b)(2).

Plaintiff also analogizes to two out-of-Circuit cases; neither command a different outcome. First,

11

plaintiff alleges that the Third Circuit held that "parental due process rights are implicated when schools collect personal information from students without notice, consent, or opt-out options" in *C.N. v. Ridgewood Board of Education*, 430 F.3d 159 (3d Cir. 2005). Compl. ¶ 33. In *C.N.*, the plaintiffs were three students and their mothers, who together argued that public school district officials violated the plaintiffs' rights under FERPA, the PPRA, and the U.S. Constitution by administering an anonymous survey that solicited "information about students' drug and alcohol use, sexual activity, experience of physical violence, attempts at suicide, personal associations and relationships (including the parental relationship), and views on matters of public interest." 430 F.3d at 161. *C.N.* thus involved both a survey and protected data—neither of which are at issue here.

The second case plaintiff cites is *Rhoades v. Penn-Harris-Madison School Corporation*, 574 F. Supp. 2d 888 (N.D. Ind. 2008). Relying on this authority, plaintiff asserts that "[w]here the government makes behavioral assessments and initiates quasi-clinical action, procedural due process is required." Pl. Resp. 5. In *Rhoades*, the plaintiffs argued that their constitutional and statutory rights were violated when school officials administered a psychological assessment without parental consent. 574 F. Supp. 2d at 889-90. Not only was the assessment a bonified survey, but the administrators also used its results to diagnose students with psychiatric disorders. *Id.* at 892. Again, that is a far cry from the allegations here.

Ultimately, the character of the intrusion into the limited privacy interest here is relatively minimal: in essence, students are merely informing their teachers where they need to go and for how long. Although the DHP system stores the data, the data does not "lead to the imposition of discipline or have any academic consequences[,]" *Bd of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 833 (2002); to the contrary, a school's BHWT reviews the data as part of determining whether it can provide any additional support to certain students, Compl. Ex. D at 4. Moreover, defendant has legitimate government interests in recording class attendance, increasing the amount of time students are spending in class learning, maintaining a safe educational environment for students and employees, and monitoring students' whereabouts on campus in case of an emergency. In this context, defendant's use of the DHP system is a reasonable means of furthering its important interests in maintaining a safe educational

12

environment for its students.

Because plaintiff does not allege a protected interest to which due process protections attach, he does not state a claim for violation of his procedural due process rights.

**B.      Claim Under ORS § 336.187**

Plaintiff next alleges that defendant's use of the DHP system violates ORS § 336.187. Compl. ¶¶ 39-40. ORS § 336.187 requires school districts to disclose students' personally identifiable information ("PII") or other information allowed to be disclosed under FERPA in two situations. *See* Or. Rev. Stat. § 336.187 (requiring disclosure of protected information (1) in certain circumstances "in connection with a health or safety emergency" and (2) in certain circumstances to "[c]ourts and state and local juvenile justice agencies"). Plaintiff's ORS § 336.187 claim fails for two reasons.

First, ORS § 336.187 does not create a private right of action. A statute may create a private right of action either expressly or impliedly. *Deckard v. Bunch*, 358 Or. 754, 759, 370 P.3d 478 (2016). "Whether a statute does so is a question of statutory interpretation." *Doyle v. City of Medford*, 356 Or. 336, 344, 377 P.3d 797 (2014) (cleaned up). To answer this question, courts consider "the text, context, or legislative history of the statute creating the duty." *Id.* at 345. Here, the text of ORS § 336.187 plainly does not create a private right of action. No portion of the statute refers to civil liability. As to context and legislative history, plaintiff has not pointed to any context or legislative history indicating that ORS § 336.187 creates either an express or implied private right of action, and the Court is not aware of any. No portion of ORS Chapter 336 provides an umbrella of civil liability for the entirety of the chapter. *See generally* Or. Rev. Stat. ch. 336. Without a private right of action, plaintiff's ORS § 336.187 claim is a non-starter.

Second, even if a private right of action did exist under ORS § 336.187, none of plaintiff's allegations reflect a failure to disclose relevant information under the two circumstances described in the statute. Accordingly, plaintiff has not stated a claim under ORS § 336.187.

//

//

C.      **Oregon Constitutional Claims**

1.      *Article I, section 9*

Assuming without deciding that plaintiff has standing to bring his Article I, section 9 claim, the Court concludes that plaintiff's Article I, section 9 claim fails. Article I, section 9 "establishes a right of the people 'to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure.'" *State v. Fulmer*, 366 Or. 224, 229, 460 P.3d 486 (2020) (en banc) (quoting *State v. Rodgers/Kirkeby*, 347 Or. 610, 621, 227 P.3d 695 (2010)). "For purposes of Article I, section 9, a search occurs only if governmental action invades 'a protected privacy interest.'" *State v. Newcomb*, 359 Or. 756, 764, 375 P.3d 434 (2016) (quoting *State v. Wacker*, 317 Or. 419, 426, 856 P.2d 1029 (1993)). "'[T]he privacy protected by Article I, section 9, is not the privacy that one reasonably *expects* but the privacy to which one has a *right*.'" *Id.* (emphasis in original) (quoting *State v. Campbell*, 306 Or. 157, 164, 759 P.2d 1040 (1988)). To challenge a search as violating Article I, section 9, an individual must assert that their personal rights were violated, as distinguished from someone else's rights. *State v. Johnson*, 153 Or. App. 535, 538 n.1, 958 P.2d 887 (1998) (en banc).

Here, plaintiff alleges that Article I, section 9 "protects . . . students . . . from unreasonable searches and informational intrusions by government actors." Compl. ¶ 39. In his response to defendant's motion, plaintiff argues that "[t]he DHP system constitutes a form of informational surveillance" that "collects, stores, and shares data about students' personal movements, behaviors, and inferred needs, often without a legitimate educational interest." Pl. Resp. 26. Plaintiff complains that because he "cannot access this data and is not informed about how it is used," his rights under Article I, section 9 have been violated. *Id.* Plaintiff's claim under Article I, section 9 fails. Plaintiff bases his Article I, section 9 claim on allegations that the DHP system collects and stores behavioral data of students in the District, including plaintiff's child. But that data is the students'—not plaintiff's. Plaintiff thus cannot assert a personal privacy right over that data and, accordingly, plaintiff cannot challenge the DHP system under Article I, section 9.

2.      *Article I, section 10*

Finally, plaintiff's claim under Article I, section 10 also fails. Plaintiff generally alleges that

14

"Article I, [s]ection 10 guarantees the right to a legal remedy for injury caused by unlawful actions." Compl. ¶ 39. Plaintiff alleges that defendant's actions are unlawful under ORS §§ 336.184(3)(a) and 336.187(1), which together "impose clear obligations on school districts to protect student data, restrict access to individuals with a legitimate educational interest, and provide annual parental notices that explain how student information will be collected, used, and shared." *Id.* (citing *Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17-20, 734 P.2d 1326 (1987)). Plaintiff concludes that "[b]y expanding the system without transparency, public input, or adherence to the data governance provisions in ORS [§] 336.184, the District has denied Plaintiff a remedy in violation of Article I, [s]ection 10." *Id.* ¶ 41.

To begin, as discussed above, plaintiff has not alleged facts showing any violation of ORS § 187. This statute thus cannot serve as the basis for plaintiff's Article I, section 10 claim. The Court finds the same to be true of ORS § 336.184. First and foremost, plaintiff has withdrawn his claim under ORS § 336.184. Pl. Resp. 3. Thus, plaintiff does not allege any violation of ORS § 336.184. Without a violation, plaintiff identifies no legal basis for his Article I, section 10 claim. Second, ORS § 336.184, like ORS § 336.187, does not provide for either an express or implied private right of action.[3] This separately dooms plaintiff's claim. Third, even assuming ORS § 336.184 could serve as the basis of plaintiff's Article I, section 10 claim, plaintiff's allegations do not show any violation of that statute. ORS § 336.184 prohibits "operator[s]" of Internet websites from disclosing Oregon students' "personally identifiable information or materials" except under certain circumstances. Or. Rev. Stat. § 336.184(2)(a); *id.* § 336.184(2)(c); *id.* § 336.184(3)(a)(E). Plaintiff does not allege that defendant is an "operator" to whom ORS § 336.184's prohibitions apply. This again is an independent basis to deny plaintiff's Article I, section 10 claim. For all of these reasons, plaintiff's claim under Article I, section 10 fails.

## CONCLUSION

For the reasons discussed herein, defendant's motion to dismiss, ECF 19, is GRANTED. Because this is the first motion to dismiss addressed in this case and it is not "absolutely clear that no amendment

---

[3] The same analysis applies to both statutes.

can cure the defect[s]" identified herein, *Garity*, 828 F.3d at 854, and in light of the leniency owed to plaintiff as a self-represented litigant, the Court grants plaintiff thirty (30) days to file a second amended complaint. If no amended complaint is filed, this action will be dismissed.

IT IS SO ORDERED.

DATED this 17th day of April, 2026.

Adrienne Nelson
United States District Judge